**Madeline MILBERG, Plaintiff,**

v.

**WESTERN PACIFIC RAILROAD COMPANY and Dow Jones & Company, Inc., trading under the name of Barron's Weekly, Defendants.**

**No. 70–Civ. 1033.**

United States District Court,
S. D. New York.

Dec. 23, 1970.

Leibowitt, Milberg, Weiss & Fox, New York City, for plaintiff.

Olwine, Connelly, Chase, O'Donnell & Weyher, New York City, for defendant Western Pac. R. Co.

Patterson, Belknap & Webb, New York City, for defendant Dow Jones & Co., Inc.

## MEMORANDUM

CROAKE, District Judge.

Plaintiff has moved for an order pursuant to Rule 23(c) (1) of the Federal Rules of Civil Procedure to determine that this action be maintained as a class action. The facts of the case are as follows.

### I

Defendant Western Pacific Railroad Company is a California corporation listed on the New York Stock Exchange. Defendant Dow Jones and Company is a Delaware corporation. Among its activities, Dow Jones publishes *Barron's Weekly*, a newspaper which analyzes securities and reports information of interest to the financial community. The publication has a weekly circulation of 225,000 copies. The May 19, 1969 issue of *Barron's Weekly* contained an article about Western Pacific which included the following statement—

> "Western Pacific got off to a slow start this year. * * * Net for the June quarter, however, is expected to show some improvement over the $1.7 million, or 84 cents per share, earned in the like three months of 1968."

Later events did not bear this statement out. Earnings for the June quarter, in fact, amounted to only 25 cents per share.

On June 12, 1969, plaintiff Madeline Milberg purchased 65 shares of Western Pacific common stock on the New York Stock Exchange at a cost of $35⅜ per share. She makes no claim of having read the article in question, but maintains that her purchase was influenced by the general market climate created by it. Subsequent to this purchase, the market price of Western Pacific common stock dropped considerably. Plaintiff is now suing Dow Jones and Western Pa-

cific for damages equal to her market losses.

In bringing this suit, plaintiff relies on § 10(b) of the Securities Exchange Act of 1934 and Rule 10(b)–5 promulgated pursuant thereto. Her claim is that if the information on which the article was based was not supplied to Barron's by Western Pacific, then the statement was made by *Barron's* "with careless, reckless, and wanton disregard as to its truth or falsity." And, if the information was supplied by Western Pacific, then it did so "with careless, reckless, and wanton disregard as to its truth or falsity." Either way, plaintiff contends that a § 10(b) and 10(b)–5 violation exists.

Plaintiff has moved before this court for an order declaring her action to be a class action, with the class defined so as to include all persons who bought common stock in Western Pacific between the dates of May 19, 1969 and July 31, 1969 in reliance upon the article in question or the market climate induced thereby. The motion is denied.

## II

■■ It is not disputed by any of the parties involved in this litigation that class actions have been liberally allowed with respect to the securities field. Green v. Wolf Corporation, 406 F.2d 291 (2d Cir. 1968). However, before litigation can proceed as a class action, the parties seeking to have it so designated must make a preliminary showing that there is a substantial possibility of success. Dolgow v. Anderson, 43 F.R.D. 472 (E.D.N.Y.1968). No such showing has been made in the case now before us.

This is not the proper time to reach a final judgment on the merits of the action in question. However, it must be noted that what plaintiff has euphemistically chosen to call a "cause of action" would appear to have little chance of success.

What plaintiff is apparently attempting to do by this action is establish a new rule of law to the effect that, when a financial publication prints an estimate of a company's earnings, the company must earn at least that amount or both the publication and the company will be held strictly liable for any loss in market value of the stock after the date when the estimate is printed. This would be a most unusual rule of law to say the least, but it is the only framework within which the plaintiff can claim a cause of action.

Where the alleged liability of Western Pacific is concerned, the following facts are clear—

1. The *Barron's* estimate did not purport to quote Western Pacific officials.

2. The estimate was consistent with Western Pacific's own good faith internal estimate of earnings for the June quarter.

Thus, in order to find Western Pacific liable, this court would have to adopt a rule which would force corporations to read every article written about them, and hold them liable even then for any inaccuracies therein. This court declines to adopt such a rule.

As for the alleged liability of defendant Dow Jones, it is clear that—

1. There has as yet been no proof offered to support the proposition that Dow Jones deliberately or recklessly mistook the facts.

2. The estimate of earnings was no more than an estimate, and could not reasonably have been expected to be infallible.

Thus, plaintiff is also asking for strict liability here. And there is added a rather self-seeking attempt to infringe upon defendant's first amendment rights as well.

"A trial court is not without some measure of judgment as to whether a class adjudication can serve any useful purpose in a particular situation." Kan-

sas City, Mo. v. Williams, 205 F.2d 47, 52 (8th Cir. 1953), cert. denied, 346 U.S. 826, 74 S.Ct. 45, 98 L.Ed. 351. In the case now before us, no useful purpose would be served by the declaration of a class action. Accordingly, plaintiff's motion is denied.

So ordered.